**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**JUANITA LEONARD**                                                                                  **PLAINTIFF**

**VS.**                                        **No. 3:21-cv-00261 PSH**

**KILOLO KIJAKAZI, Acting Commissioner,**
   **Social Security Administration**                                                  **DEFENDANT**

**ORDER**

Plaintiff Juanita J. Leonard ("Leonard"), appeals the final decision of the Acting Commissioner of the Social Security Administration (defendant "Kijakazi") to deny her claim for disability insurance benefits ("DIB").   Leonard contends the Administrative Law Judge ("ALJ") erred in four ways: (1) by failing to consider her need to be absent from work in his residual functional capacity ("RFC") determination; (2) by utilizing a faulty hypothetical question and reaching a faulty RFC conclusion with regard to her exertional and manipulative limitations; (3) by utilizing a faulty hypothetical question and reaching a faulty RFC conclusion with regard to her limitations in concentration, persistence, and pace; and (4) by failing to consider the combined effects of her impairments.  The Court has carefully reviewed the record, including the medical records, to determine whether there is substantial

1

evidence to support Kijakazi's decision.  42 U.S.C. § 405(g).  The relevant period

under consideration is from December 1, 2018, the amended onset date, through April

28, 2021, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questions posed by the ALJ, Leonard stated the following.  At

time of the hearing, she was 5'2" tall, weighed about 170 pounds, was 50 years old,

and had a high school education.  Leonard was living with her husband and a brother-

in-law.  Her past work experience included kitchen work with the Valley View school

district, where she continued to work part-time (5 days a week, 3 hours a day) as a bus

monitor.[1]  Leonard left the kitchen job because it required too much standing,

resulting in back pain.  Leonard estimated she could drive for 30-60 minutes but no

more because she would need to sleep.

In response to questions from her attorney, Leonard elaborated as follows.  She

stopped working the kitchen job in November 2018 because it required her to be on

her feet all day and required lifting, which caused lower back pain.  She also identified

additional impairments of bone spurs in her neck; rheumatoid arthritis;[2] carpal tunnel

---

[1]

Leonard began working as a bus monitor in 2006.

[2]

Her rheumatoid arthritis was described as causing pain in her knees, toes, hands, neck, and
back.

syndrome;[3] lumbar, thoracic, and cervical degenerative disc disease; right elbow ulnar nerve compression;[4] left hand problems; worsening problems with attention span, understanding and remembering directions; depression, anxiety, and post traumatic stress disorder; headaches "all the time;" asthma; chronic obstructive pulmonary disorder ("COPD"); and sleep apnea.  (Tr. 47).

Leonard described the following diagnoses, limitations, treatment, and daily activities.  Citing an MRI of her neck and back, Leonard stated she had a herniated disc at T6–T7 and a tear at L5–S1, as well as moderate to severe narrowing of her cervical spine.  She also testified that she risked dropping items weighing over 10 pounds with her dominant right hand, and noted that her left hand was now having issues ("beginning to jerk").  (Tr. 46).  Leonard claimed she could not work for 4-5 hours, much less 8 hours, and could not stay awake for 6 hours.  She described reaching and manipulating limitations, inability to stay on her feet for long periods of time, inability to sit and work due to carpal tunnel syndrome, and problems with work requiring her to look from right to left and from up and down.

Leonard identified the many prescription medications she was taking, including

---

[3]
Leonard testified to two carpal tunnel surgeries, one in 2020 and another about five years prior to the hearing.

[4]
Surgery in 2020 for the ulnar nerve compression helped "a little bit."  (Tr. 46).

Wellbutrin, Oxycodone, Meloxicam, Trazodone, and medications targeting her depression. She also indicated she had been in pain management and received 4-5 injections in her back for pain, with limited relief (they work for "maybe a week"). (Tr. 47). Leonard also stated she was taking a muscle relaxer for her rheumatoid arthritis and using inhalers for breathing issues, which increased with exertion. She has but does not use a CPAP machine for her sleep apnea.

Leonard described her daily work schedule as a bus monitor, which required her to be on the job for an hour and a half in the morning and an hour and a half in the afternoon. Leonard testified that her neck and back hurt after her morning work, so she would take medication, lie down, and sleep for two hours. Following her afternoon work, she stated she would take pain medication and try to cook dinner. A side effect from the pain medication was drowsiness. In a follow-up exchange with the ALJ, Leonard indicated she rode on her husband's motorcycle but did not drive it, and this activity irritated her back. She also reiterated she received pain injections for her back but had not undergone any surgery.

Stacy McKisick ("McKisick"), a vocational expert, testified. The ALJ posed a series of hypothetical questions to McKisick, first asking her to consider a hypothetical worker of Leonard's age, education, and experience, who could perform light work with the following restrictions: could occasionally climb, stoop, crouch,

kneel, and crawl; could frequently reach and handle bilaterally; could have superficial contact with the public, coworkers, and supervisors; could understand, follow, and remember concrete instructions; and should avoid temperature extremes, heavy dust, heavy fumes, heavy chemicals, and work indoors in a climate-controlled environment. McKisick responded that such a worker could not perform Leonard's past relevant work. However, McKisick identified two other light jobs which the hypothetical worker could perform – small products assembler I and office helper.

The ALJ then altered the hypothetical, limiting the worker to sedentary rather than light work, conceding that such a worker would be disabled under the Medical-Vocational Guidelines (the "Grids") at the age of 50. McKisick stated such a worker could perform the job of food and beverage order clerk. When the ALJ again altered the hypothetical parameters, McKisick opined that jobs were not available to a worker off task for 15% or more of the day, or a worker needing extra breaks. (Tr. 30-64).

*ALJ's Decision:*

In his May 3, 2021 decision, the ALJ determined that Leonard had the following severe impairments: arthritis; rheumatoid arthritis; carpal tunnel syndrome; degenerative disc disease; hypothyroidism; restless leg syndrome; migraines; obesity; anxiety; posttraumatic stress disorder ("PTSD"); depression; and insomnia. The ALJ also determined that Leonard's mental impairments, considered singly and in

5

combination, did not meet or medically equal a listed impairment.  In reaching this conclusion, the ALJ considered the "paragraph B" criteria regarding mental impairments.  The ALJ found Leonard had a mild limitation in three of the four functional areas:  understanding, remembering, or applying information; interacting with others; and adapting or managing oneself.  A moderate limitation was found in the area of concentrating, persisting, or maintaining pace.  The ALJ also determined that Leonard did not satisfy the requirements of "paragraph C" because the record did not demonstrate existence of the disorder for at least two years combined with ongoing treatment and reduced capacity to adjust to demands that are not already part of her daily life.

The ALJ found Leonard did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Specifically, the ALJ discussed Listing 1.15 (back impairment), Listing 1.18 (abnormality of major joint in an extremity), and Listings 12.04, 12.06, and 12.15 (mental impairments).  The ALJ also addressed Leonard's arthritis, migraines, and obesity.

The ALJ assessed Leonard to have the residual functional capacity ("RFC") to perform a range of light work with the restrictions which mirrored those detailed in the initial hypothetical question posed to McKisick.  The ALJ assessed Leonard's

subjective allegations, finding her statements "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 18).

The ALJ summarized the medical evidence, beginning with a cervical spine x-ray from September 2018, a few months before the amended onset date of December 1, 2018. Other imaging results noted by the ALJ included a thoracic spine MRI in September 2018, a lumbar spine MRI in September 2018, x-rays of the right wrist and hand in January 2019, a cervical MRI in April 2019, x-rays of the right wrist in March 2020, and a lumbar MRI in 2021. The ALJ acknowledged limited range of motion of the cervical spine in the medical records while also noting numerous findings of normal motor strength and normal, or unremarkable, gait and station.[5]

The ALJ also reviewed the opinions offered by the state agency physicians, finding the opinion of William Harrison, M.D., that Leonard could perform light work, "generally persuasive." (Tr. 21). Similarly, the ALJ found the opinions[6] of Rachel Morissey, Ph.D., and Marilyn Jordan, Ph.D., regarding Leonard's mental

---

[5]

The ALJ noted normal gait and station in September and December 2018, January, April, October, and November 2019, and February 2021. An irregular gait was noted in June 2018. (Tr. 1493). Several notations of normal gait and station were accompanied by a treating source encouraging Leonard to continue with her walking exercise program. (Tr. 627, 643, 871).

[6]

These experts opined Leonard had mild limitations except for a moderate limitation in her ability to concentrate, persist, or maintain pace.

impairments were "generally persuasive." (Tr. 21).

The ALJ concluded that Leonard was not capable of performing her past relevant work. Relying on McKisick's testimony, the ALJ determined that Leonard could perform other jobs, such as small products assembler or office helper, that exist in significant numbers in the national economy. Accordingly, the ALJ decided Leonard was not disabled. (Tr. 11-24).

*Leonard's First Claim – the ALJ failed to consider her need to be absent from work in his RFC determination.*

Leonard faults the ALJ for failing to consider her need to be absent from work due to treatment of her multiple chronic medical conditions. She points to the voluminous medical record and to her frequent medical appointments (61 visits in 2019, 54 in 2020, and 20 from January 1 through April 2, 2021) to establish the ALJ's error. She contends the sheer frequency of her treatment required the ALJ to include work absences in the hypothetical posed to McKisick.

The ALJ did not err by omitting work absences in his formulation of the hypothetical question. For error to exist in this regard, Leonard would need to establish a basis for the excessive absence provision. She did not. Although she points to the record and her frequent appointments in the past, she offered no evidence of how often she would be required to attend appointments in the future. No medical

source opined on how frequently she would be absent from work. As a result, any limitation based on absences would be speculative. This argument was ably addressed in *Hendrix v. Kijakazi*, 2022 WL 4534962, W.D. Mo. Sept. 28, 2022. "Setting aside the speculative nature of the argument, Plaintiff ignores it is her burden to establish the RFC. *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016). She points to no medical opinion in the record supporting her claim that her fatigue would cause her to be off task or absent from work. As such she did not carry her burden of establishing a limitation related to missing work or being off task should have been included in the RFC. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008)." There is no error in the ALJ's omission of a limitation relating to absence from work.

*Claim Two – the ALJ utilized a faulty hypothetical question and reached a faulty RFC conclusion with regard to her exertional and manipulative limitations.*

Leonard contends the ALJ erred in finding she could perform the walking and standing requirements of light work and that she could frequently handle as part of her job duties. An integral part of this argument is Leonard's assertion that the ALJ improperly weighed her subjective statements.

As part of assessing the claimant's RFC, the ALJ is required to evaluate the subjective statements of the claimant. *See Pearsall v. Massanari*, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by determining whether the claimant has a medically

determinable impairment that could reasonably be expected to produce pain or other

symptoms and, if so, evaluating the intensity, persistence, and limiting effects of the

pain or other symptoms.  *See* Social Security Ruling ("SSR") 16-3p.  In making the

latter evaluation, the ALJ must consider all the evidence, including information about

the claimant's prior work record, and evidence of the following factors:

> (1) daily activities; (2) the location, duration, frequency, and intensity of
> pain or other symptoms; (3) factors that precipitate and aggravate the
> symptoms; (4) the type, dosage, effectiveness, and side effects of any
> medication the claimant takes or has taken to alleviate pain or other
> symptoms; (5) treatment, other than medication, the claimant receives or
> has received for relief of pain or other symptoms; (6) any measures other
> than treatment a claimant uses or has used to relieve pain or other
> symptoms . . . ; and (7) any other factors concerning a claimant's
> functional limitations and restrictions due to pain or other symptoms.

*See* SSR 16-3p.  The ALJ is not required to explicitly discuss each relevant factor.

*See Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

Leonard faults the ALJ for his evaluation of her subjective statements, alleging

he "cherry-picked" facts supporting non-disability while ignoring evidence of

disability.  *Plaintiff's brief*, page 59.  While Leonard is correct that the ALJ

emphasized certain facts in evaluating her subjective statements, his overall treatment

of her statements is supported by substantial evidence.  The ALJ's citation to objective

medical evidence, such as the imaging results on her back, hand, and wrist, was

appropriate.  In addition, he appropriately noted normal findings of gait and station,

normal muscle strength and tone, mild carpal tunnel syndrome (with release surgery in February 2020), and mild ulnar entrapment neuropathy of the right elbow.  The ALJ conceded that Leonard had limited range of motion in her lumbar spine, tenderness, limited range of motion in her right wrist, and pain and stiffness in her wrists, hands, elbows, knees, ankles, and feet.  The ALJ accounted for these limitations with his postural and manipulative restrictions rather than finding Leonard could perform the full range of light work.

The ALJ was not obliged to accept Leonard's subjective statements without reservation.  Instead, his duty was to consider those statements as a part of the RFC equation.  In this instance, the ALJ carried out his duty, and there was no error in his treatment of Leonard's subjective statements and his RFC formulation.  Since the hypothetical question was based upon the RFC assessment, it follows there was no error in the questions posed to McKisick.

*Claim three – the ALJ utilized a faulty hypothetical question and reached a faulty RFC conclusion with regard to her limitations in concentration, persistence, and pace.*

Leonard next claims error because the ALJ's RFC and hypothetical question failed to account for her moderate limitations in the ability to concentrate, persist, or maintain pace.  The RFC determination limited the worker to superficial contact with

the public, co-workers, and supervisors; and indicated the worker could understand, follow, and remember concrete instructions.  (Tr. 17).  Even though the ALJ found moderate limitations in concentration, persistence, and pace at Step 3, the RFC determination was not identical to the Step 3 findings.  There is no error in differing findings at Step 3 and in the RFC.[7]  Each step of the sequential evaluation process serves a distinct purpose, "the degrees of precision required at each step differ," and the deferential standard of review precludes the Court from labeling findings as inconsistent if they can be harmonized.  *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) [citing *Lacroix v. Berryhill*, 465 F.3d 881, 888 n.3 (8th Cir. 2006) ("Each step in the disability determination entails a separate analysis and legal standard.")].

Citing *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996),[8] and *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997), Leonard argues that the hypothetical question posed

---

[7] The relevant regulation, SSR 96-8p, acknowledges this difference: "The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  *See also Berry v. Berryhill*, No. 3:17cv245 PSH (E.D. Ark. Jul. 11, 2018) (Step 3 findings are not the same as an RFC assessment).

[8] In *Newton*, there was no dispute that the claimant suffered from deficits in concentration, persistence, or pace, with the ALJ noting that the claimant "often" suffered from these limitations.  Unlike the present case, the ALJ's hypothetical in *Newton* limited the worker to "simple jobs" with no further elaboration.  92 F.3d at 695.

to McKisick was inadequate, as it should have included a specific limitation for concentration, persistence, and pace or, in the alternative, more specific limiting language, such as describing the work as not requiring close attention to detail, the phrase used in *Brachtel*.

The Court finds the hypothetical question adequately accounted for Leonard's deficiencies of concentration, persistence, and pace. While the RFC does not contain the Step 3 limitations, it does include limitations (superficial contact, concrete instructions) which target Leonard's capabilities. As recognized by the relevant regulation and case law, the ALJ was not duty bound to duplicate the Step 3 wording into the RFC. Substantial evidence supports the ALJ's formulation of the hypothetical question and the RFC with regard to mental impairments.

Another reason supports the ALJ's hypothetical question. As in *Berry*, the ALJ cited the claimant's activities of daily living in reaching his RFC conclusion. In particular, Leonard's ability to maintain part-time employment where she worked five days a week showed some ability to concentrate and persist.

Under these circumstances, the ALJ was not obligated to explicitly include the Step 3 limitations he noted in the hypothetical question posed to McKisick. Leonard's daily activities supported the ALJ's treatment of the limitations, and the hypothetical question adequately captured her abilities.

*Claim four – the ALJ failed to consider the combined effects of Leonard's impairments.*

Leonard contends the ALJ erred by considering her impairments in isolation, failing to weigh the impairments in combination. In his opinion, the ALJ recited that disability is defined as the inability to work due to "any medically determinable physical or mental impairment or *combination of impairments*." (Tr. 12) (emphasis added). The ALJ also indicated he "has considered all of the claimant's impairments individually and in combination." (Tr. 14). After finding that Leonard had twelve severe impairments, the ALJ explicitly found she did not have an impairment or combination of impairments that met a listing. (Tr. 14). In determining Leonard's RFC, the ALJ repeatedly refers to her "impairment(s)," indicating an evaluation of the entirety rather than a portion of the impairments. (Tr. 17-18).

The ALJ chose to analyze the various impairments individually in his opinion. This approach was helpful, especially in light of Leonard's numerous severe impairments. Taking this approach is not evidence that the ALJ failed to consider the impairments in combination. *See, e.g., Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (Court relied upon the ALJ's statement that he considered a combination of impairments and upon ALJ's use of the words "symptoms" and "impairments" as evidence of consideration of combination of impairments). Finally, the ALJ wrote

14

that his decision was "based on the entire record." (Tr. 22). There is no merit to this argument.

In summary, the Court finds that the ultimate decision of Kijakazi was supported by substantial evidence. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Kijakazi is affirmed and Leonard's complaint is dismissed with prejudice.

IT IS SO ORDERED this 17th day of January, 2023.

_____
UNITED STATES MAGISTRATE JUDGE